The attorneys would step up to the podium and identify yourselves for the record. Good morning, your honors. May it please the court. I'm Arianne Stein on behalf of Lucious Flournoy. Good morning, your honors. My name is Nicholas Flournoy. I'm the assistant state's attorney on behalf of the people of the state of Illinois. Good morning to both of you. All right. We will allow each of you approximately 15 minutes to present your argument. And from that, Ms. Stein, you may save out some time for your argument. May it please the court. Prior to trial, defense counsel requested that the state disclose the surveillance location of Officer Doherty, who was the only officer to have viewed the alleged drug transactions. When the state wants to invoke its surveillance privilege, the state bears the initial burden to show that disclosure of the location would harm the public interest. The court here held an in-camera hearing to determine if the state met that burden. And the hearing was not transcribed. Before you continue, the state makes an initial argument that you have not preserved this error for review. What is your response to that? Well, in terms of not having transcribed the in-camera hearing, we are conceding that it would be the defendant's burden to request a transcript below. So we can't provide a complete record. However, but I was talking about the initial issue that hasn't been preserved, not the fact that we don't have a transcript. The argument was made by the defendant that he should be allowed to know the location However, subsequently in the motion for a new trial, the argument regarding the right to cross-examine or even the right regarding the privilege was not contained in the motion for a new trial. So I'm talking about this initial question of whether the issue itself has been preserved. We'll talk about the in-camera proceeding later. Well, because the issue affected defendant's constitutional right to confront witnesses against him, the error is reviewable under Cregan. What does Cregan tell us? Cregan tells us that when there is a constitutional error, if the defendant has preserved it during trial, it doesn't have to be in the motion for a new trial. Oh. Also, in Knight and Price, both of those cases, the state made the same argument, and the court found that the error was reviewable. All right. Now you may proceed. Concerning, again, 415, 415-F does require that the defense request a transcript below, and regrettably, defense counsel did not request that, nor did any of the other parties, and so we are conceding that there is a presumption the state met the initial burden in the in-camera hearing. However, that does not affect the ultimate outcome here because the results of the  Even if the state met its initial burden, the court still has to engage in a balancing test to determine if the public's interest in keeping the location private outweighs the defendant's need for the information. Ms. Stein, I think we can assume that the officer was in an elevated location around the lot. Isn't that what the record shows? That is correct. So that would indicate to me that it is in somebody's apartment near that lot. Correct? That is likely, unless it was some other kind of person. I don't think he was a cherry picker or something. He was clearly in an apartment somewhere, right? It could be an apartment or somewhere. So wouldn't that indicate to you that somebody is cooperating with the police, and isn't there an interest in keeping that location secret? Certainly, that is important, and the case law has recognized that important, but it does not outweigh the defendant's need for the information under the confrontation clause. Also, I think it's important to recognize that if we're worried about the safety of residents, a defendant or drug dealer is likely to be able to figure out approximately where the officer was anyway. So a defendant could ask around the neighborhood or people in the building who let the police inside, and he might be able to find approximately where it was anyway and the person who let the police in if safety is a concern. When the court conducted this hearing, my first question to you is this. There was a motion filed by the defendant to have the location disclosed, but how did this automatic suppression of this information occur? Did the state first ask, or is this something that's being done routinely? In this case, it seemed to be just done routinely. All the parties seemed to agree that an in-camera hearing would be the next step. Yes, but what I'm asking you is, was there some sort of discovery motion that the defendant filed, and at some point did the state say something like, we're not disclosing? The defense did file a discovery motion asking for this location and explaining why she needed it, and the state never specifically said we're not disclosing. I don't believe they made those exact statements, but the parties all seemed to agree that an in-camera hearing would be the next step. So it appears that this is some sort of routine procedure now, that in possession with intent to deliver cases, the parties are just assuming that the location will not be disclosed as a matter of course? That seems to be what happened here, and that's part of the problem with privileges that's being used in this routine manner, where in certain cases like the instant case where this is a low-level drug deal, not a major drug deal, a big conspiracy going on where the officers have a long investigation, and yet they're failing to disclose it. The state has compared this case to People v. Reed, where there was also only one officer to testify that he saw the transaction, and the court there ruled that the defendant was not prejudiced for failing to disclose. However, this case differs from Reed, because the court there found that no evidence called into question the officer's ability to observe, but we do have such evidence in this case. Officer Doherty testified that the buyers gave Flournoy money, and that he observed Flournoy for the entire incident. He never lost sight of him. However, Flournoy was arrested immediately, and there was no money on him. So this calls into question the officer's ability to remember, and whether or not he accurately identified the seller. Was there any other surveillance officer that actually viewed the transactions? No. There were no other surveillance officers, no other witnesses to see the transactions in this case. So there was a controlled substance or packets that were recovered, but there was never any money that was inventoried or produced. That is correct. And that's significant in this case, because it distinguishes the incident situation not just from Reed, but from all of the Illinois Appellate Court cases. In Quinn, Bell, Britton, and Stokes, all of the defendants there were found with money on them. So would the result be different if there were... So you have a single eyewitness in this. Correct. That's it. That's all you've got. And the recovery of the drugs, but no money. So you really don't have any indicia of delivery. Correct. Other than the multiple packets. Correct. All right. So would it be different if one of the other officers who were assigned to this also saw the transactions? Would we have a different result? Or is it the fact that there is a single eyewitness that in and of itself requires this to go back? I think if we did have another witness, that would change the balancing scale here. There are other problems, other facts, in this case suggesting possible misidentification. So we would have to weigh those depending how credible that other officer was. But I could see a case where if the officer gave more information, there were two surveillance officers, then that might change the outcome here. Ms. Stein, I want you to go back now to the nature of this in-camera proceeding. And we ask you to be prepared to discuss not only the rule which says the court shall prepare a transcript, seal it, and have it for review, our review. There's two cases that I also thought the parties would be ready to discuss, Coates and DeLeon. Yes, Your Honor. Now, in those cases, wasn't it the defendant in each case that asked for certain information to be disclosed? Yes, that is true. In this case, isn't it the State that is seeking to preclude the surveillance location? That is true. The statutory rules that dictated under DeLeon and Coates, the statutory site that did not allow the DOC records in DeLeon and the DCFS records in Coates, are also a type of privilege. Yes, but in those cases, the movement party seeking to get the information, have it disclosed, was the defendant. Is that not right? That's correct. All right. And here we have the State seeking to keep out a location of the surveillance. That's correct. And didn't the Supreme Court in those cases say that it was the burden of the movement to produce or to make certain that an in-camera hearing be transcribed and provided for review? Yes, that's true. And so in this case, it could be that the State who was moving to seek the privilege, they could be the ones who would be required to have requested the in-camera hearing. So that would be a difference in a surveillance location privilege situation. In the first case that this privilege was announced, it was an appellate court case, was it not? In the Fourth District, Chris, wasn't that the case? No, it was for pretrial. Correct, for pretrial proceedings. But in any event, it was the first case that actually enunciated this notion. Correct. There could be a privilege. Right. Qualified. And in that case, do you recall some of the facts? I know that they distinguished the pretrial hearing from the trial setting, and they determined that it wasn't necessary, or the defendant didn't show that it was entirely necessary to have the privilege for a pretrial suppression hearing. They said that in a later case in Knight where the First District then recognized this privilege, there was a distinction between a motion to suppress or perhaps a preliminary hearing and trial. And so what do the courts suggest when you have a motion to disclose at, this is really at the trial, isn't it? There was a motion to suppress hearing. Right, correct. I think the case law in Price is helpful, or the language in Price is helpful to answer that question. In Price, the court compared the defendant's requirement at a pretrial hearing versus at trial. And at pretrial, a defendant must make a strong showing that disclosure is material or necessary and outweighs the public interest. But at trial, the defendant need only show that the location is relevant and helpful to the defense in order to overcome the privilege. And was that done here? Did the defendant or did the defense attorney show that the location was relevant? I believe so, Your Honor, yes. Wouldn't you really be able to say that in most cases? That the location of where the officer is serving is relevant? Well, it's certainly relevant where there's a single officer. If there's other witnesses, other testimony, perhaps a videotape of the incident, then we don't get that. That's correct, that's correct. Doesn't it still sort of remain relevant, though, regardless of the number of witnesses? Certainly it's relevant, but I think the balancing test alters a little bit. In a situation where there's more evidence, there would be cumulative evidence of what took place and what transpired. Where we have a single witness, we don't have any other evidence of what took place. And in this case, besides not having the money on him, there were other facts that suggest possible misidentification. In the Quinn case, the officer gave a detailed description of what the defendant was wearing. And in this case, there was no description at all. There was also a time discrepancy. What is the significance of a description when you have a situation such as this where the officer's making the observations, there's other officers in the area to make this arrest, if there is a series of whatever transactions, and that's what actually happens here. The officer was observing. Once he saw three transactions, he notified the other officers, and they emerged, and there was an immediate arrest. Why would there be a need for a description? Well, to make sure that he identified the proper seller. It's one more fact of credibility and making sure that the officer saw what he says that he saw. If the officer says, here's a defendant in an orange jacket, and then the enforcement officer can say, yes, there was a defendant in the orange jacket, it's more credibility that they're arresting the right individual. The officer did identify him to his partners, didn't he? He did, but we don't know specifically what was said or if there was any link-up between what he saw and who the officers identified. So in addition to there only being one eyewitness, in addition to the fact that no currency was recovered, we also have this situation where there's no description recorded anywhere to support the identification. Correct. And another factor is a time discrepancy. Officer Basil testified that he arrested Flournoy 10 minutes after the incident began, after surveillance began. But Officer Dougherty testified that he saw Flournoy walking around for 10 to 15 minutes, then the first transaction took place, then there were several more minutes, and then the second and third transaction took place. So under Dougherty's timeline, it sounds more like the entire incident was 25 to 30 minutes. So there is a concern of whether Dougherty is actually remembering the incident correctly, and it also – That's not a discrepancy of hours. That's a discrepancy of minutes. And didn't one of the officers testify that that was the time he was actually processed, and that explained the difference in time? That was a different time issue. I'm not contesting – they testified that surveillance was at 1155. The arrest report said 1257. So that was a different issue that we're not contesting. We're not saying that that's a problem. Oh, I'm sorry. I went off on a tantrum. Go ahead. What – how would you – oh, go ahead. Sorry. We'll ask you this after you're finished. So even though in some cases a discrepancy of 30 minutes versus 10 might not make a difference, it does matter here because it leads to the question of whether Dougherty had as much time to view the seller as he thought he did. What about the Reid case again? How would you distinguish that? I think the point that the defendant here had money on him is a big distinguishing factor. There was money recovered in Reid. In Reid, correct. Is that the only way you would distinguish the case? That is, I think – Pretty much says it all? I pretty much think that is the main difference, yes. But, again, it's not just Reid that had that back. It's all of the Illinois court cases. The defendants had money on them as well. Well, what case would you guide us to to support the most significant case or the strongest case that you think supports the privilege should have been – I mean the location, rather – should have been disclosed? Knight is a helpful case, Your Honor. A lot of the cases that find there's no prejudice try to distinguish Knight by saying that there were these other witnesses in Knight besides the surveillance officer. They say that defendant had an alibi witness. There was a pastor who had his – and the defendant was helping that pastor empty the van. However, the pastor testified that the van emptying occurred at 3 p.m. and the defendant wasn't arrested until 6.45. So, really, there wasn't an alibi in that case, even though some of the later case law claims that there was. And Knight doesn't focus on that either. They don't focus on the fact that there was an alibi witness that a few hours earlier he was in the area helping someone empty a van. Well, isn't this, though, similar to – was there any testimony presented in Reid by the defense? In this case, it was – there was no defense presented, other than reasonable doubt, shall we say, and the request that the location be disclosed. But other than that, there wasn't any testimony presented, was there, by the defense? Not in this case, no, Your Honor. So the officer's testimony sort of goes unrebutted, does it not? That's true. That's true. And concerning whether the court here properly balanced the defendant's interests against the State, it's helpful to consider the situations where the privilege can be asserted. And Price identifies those as either on private property or in a location whose utility would be compromised. And regarding those situations, as discussed earlier, if we're worried about safety of residents, the defendant is likely going to be able to find out who let the police in the building anyway. But we have no testimony regarding how many apartments are around there. There could be dozens that are within a small area. So I'm not sure that that assumption that you're going with, that he could figure it out anyway, so therefore there shouldn't be a privilege, I'm not sure that that applies. Well, that's true. It's possible he might not be able to, but there could be an opportunity for that. And, again, this is a low-level drug case. So in terms of what he hears, it's not that low-level. Well, in terms of compared to if the officers wanted to keep the residents safe or use the location for future drug deal and future drug surveillance, the state would have the opportunity of dismissing the charge if they didn't want to disclose that location. Is that what you're asking for, that either they disclose the location or you dismiss your case? Is that the result that you're looking for? In a case like this where there is only one surveillance officer, then that would be the outcome that would make sense. So you're asking for this court to say whenever there's a single eyewitness, unless you disclose your surveillance location, if the state refuses to do that, then they must dismiss the case. Is that what you're asking for? Yes, Your Honor, and I think that we can find support for that in the case law discussing the informant's privilege. The surveillance privilege is based on case law discussing the informant's privilege, and those cases point out that the more material a witness is to the case, the more there is a presumption for disclosure. So if a witness is a mere tipster, then they're not going to disclose him likely, but if the person is someone more involved in the case, then there would be disclosure. So any time there's a single eyewitness, there can be no privilege? That's the bright-line rule you're asking for? Unless there are other parts of the testimony. That's a C change that you're asking for. Do you agree? It is, but I think that the privilege is applied inappropriately based on the language found in the informant's case law. We don't know in this case really what the basis for the privilege was, do we? That's true, we don't. So if the officer testified that he had gone into this apartment with a willing, wasn't this originally a tip that they didn't like drug dealing going on in the lot? Wasn't that how this all began? I don't know if it was specifically in the lot. I think you just said in the area they had a tip of drug dealing in the area. So the officer goes in and tells the judge, the trial court, that it was an older woman who, there was drug dealing going on all the time, and she let them be the surveillance, but there's so much gang activity around there, she's threatened. So if that was the result of this in-camera hearing, then how would that affect your balancing skills? Well, in the case where there's a safety concern, certainly. I think the case law says that even when there is an extremely compelling reason, it's not that we're dismissing the reason, we're not saying it's not important, but a defendant's right to confrontation is always going to outweigh that concern. The cases discussing the informant privilege indicate that there might always be a risk to the informant, but no matter how compelling a state's reason might be, an informant should still be disclosed. And relating that reasoning to the surveillance location privilege, building owners who allow police in their home are one step removed from an informant. They're not able to testify that the defendant was involved in the offense at all. So if the case law says that the informants should be disclosed, despite these compelling risks, then certainly surveillance locations should also be disclosed because there's even less of a risk of harm. All right. Ms. Stein, we're going to ask you to wrap it up. We will certainly give you more time for your rebuttal. Is there anything else you'd like to say at this point? No, Your Honor. For these reasons, we request that the Court remand. All right. Mr. Flores? Good morning. Good morning, Your Honor. Have you argued here before? I have not. This is the first time. Thank you, Your Honor. I appreciate it. I'm happy to be here. All right. Well, we're happy to have you. We're going to fire away at you right away. Hopefully I'm prepared, Your Honor. All right. May it please the Court, I'm Assistant State's Attorney Nicholas Flores. I represent the people of the State of Illinois. Your Honor, the people are asking that this Court affirm defendant's conviction. Mr. Flores, what would the burden on the State be to have these in-camera proceedings transcribed? There's, under the current state… But the court reporter is sitting right out in the courtroom. Why can't they just come back in the chambers? Because under the cases involving privilege, including Reed, and the line of cases that it comes from, all of those cases are grounded in Rule 415-F, which itself, and the authority explicating Rule 415-F specifically distinguishes between what's an in-camera inspection, which does not have to be on the record, and… Well, they're reading documents. It's kind of hard to put that on the record, right? Yes, Your Honor. All right. So let's say they're having a hearing, which is what occurred in this case. I think it was Mike McHale had the officer, not the surveillance officer, but the arresting officer, come back into the chambers and testify to exactly what they had, and he read the arrest report. Correct. All right. So whatever that officer's testimony, what's the burden on the State? Why can't they just have the court order come and follow the rule saying it has to be transcribed, and then if I decide I'm not going to disclose it, then we seal it, and then we would have a basis to review it, right? That we would. Doesn't that make more sense? Under People v. DeLeon and People v. Coates, by which this Court is bound, which are from the Supreme Court, the rule is that it's the defendant's burden, not the defendant's. Is the State the one seeking the privilege? Yes, Your Honor. Although the State is seeking the privilege, the State's not the appellant. And under Rule 415F, as DeLeon and Coates make clear, it's the appellant's burden to provide this Court with the record. Before we get to the appeal, we're talking about the in-camera hearing. Did the trial court correctly not have this transcribed? Yes, because under the in-camera – So how can we review it? How can we review what happened in the in-camera proceeding if it's not transcribed? After the in-camera proceeding has happened in this case, the parties came out onto the record. The parties weren't at the in-camera hearing, but the trial court came out onto the record, and it announced that it had reviewed the – So we just got to take their word for it, that they didn't err, and that they had plenty of information, and there's nothing that we need to look at. In this case, in situations where the appellant, defendant in the criminal case, does not ask the trial court to specify what its findings were, or, as Rule 415 provides, to seal, perhaps, the arrest report, and then send it to this Court for this Court's independent review, it's unfortunately the appellant's burden to do that. Let me ask you something. Yes. One of the first things you mentioned was that you think that this rule, in terms of preparing a transcript and sealing of a record, was it your statement that it only relates to – I thought you said the rule only requires a sealing or a transcript when there's a review of documents, or did you say just the opposite? What I had intended to say, Your Honor, was that because the rule distinguishes between the inspection itself, which occurs in-camera outside the presence of the parties, and the proceedings that occur after that inspection, which will be on record, as they will in this case, if the appellant, the defendant in this case, wished for any further specificity, whether about what happened in the in-camera hearing, why the trial court decided to, in fact, rule that the State had made its preliminary showing, and that the interests weighed in favor of the public, and therefore against disclosure, if the appellant needed any further information as to why that was so this court could review it, it was incumbent upon him. Well, just a second. The rule says a record shall be made of the proceedings. Yes, Your Honor. Isn't it argument that it's an error for the trial court to conduct a hearing with the officer taking testimony in the back without a court reporter being there? The purpose of that, it says very clearly, that it be made available to a reviewing court in the event of an appeal. Isn't it error for a court to talk to a witness in the case without any of the lawyers being present, without having a court reporter there taking down what's taking place? Under the decisions of this court, it is not, Your Honor. And has that ever been raised before? Has that issue been raised? It has in the same two cases that distinguish between the inspection and the subsequent proceedings, which themselves must occur. When you say subsequent proceedings, do you mean the inspection plus testimony from a witness to the judge? What Your Honor is referring to is testimony occurring in camera between the trial court and the witness would occur during the inspection phase, which under the appellate court's cases do not require, those do not have to be on record. Well, I want to go back to the rule that Justice House just directed you to. It begins with, upon the request of any person, the court may permit any showing of cause for denial or regulation of disclosures or portion of such showing to be made in camera. Now, and then it says, a record shall be made of such proceedings. So here, in this case, there's absolutely no question that it was the state who was basically requesting that the surveillance location not be disclosed. Would you agree with that? Yes. Would you also agree that it seems from the record that this is something that is apparently happening routinely in drug cases where it's assumed that the location, the surveillance location, is not being disclosed? How else did the defendant have to file a motion in limine to get that information? Respectfully, Your Honor, I'm reluctant to say assumed in light of the way that the trial court's analysis that it has to conduct is a case-by-case one. All right. It balances. Doesn't the record here suggest that there was like this assumption already that the surveillance location wasn't going to be disclosed? In fact, wasn't it the arresting officer and not the actual surveillance officer who testified at the in-camera proceeding? So the arresting officer didn't see anything. How could he possibly give the trial court any information about the surveillance and what transpired during the surveillance? I believe, Your Honor, that the arresting officer was aware of where his partner, the surveillance officer, was. Furthermore, the defendant was apprehended by the enforcement officers, one of whom testified at the in-camera hearing. He had received a radio description from the surveillance officer. The surveillance officer described to his partner what the defendant looked like and the direction in which he was walking. It was only because of that information that the enforcement officer was able to then detain the defendant and take him into custody. Going to that point, Your Honor, that adds corroboration to the surveillance officer's testimony. Both this Court's case in people versus Quinn and people versus Britton both countenance the fact that when a surveillance officer, when an additional officer testifies to what the defendant looked like, that he or she were able to apprehend the defendant because of information received from the surveillance officer. Isn't that the problem with this corroboration? You have a surveillance officer saying, I saw the guy take money, currency, from three separate transactions. He describes him, and then when the enforcement officer stops that individual, there's no money. Isn't there an issue there? There's an issue insofar as the fact finder is available to judge the credibility of the officers in the case, which is the touchstone, which is one of the touchstones for whether the privilege applies properly. The cases of this Court concerning the privilege maintain consistently that where the fact finder is able to judge the credibility of the officers, that the cross-examination is robust enough for the fact finder to do so. But in this particular case, the argument was made by the defense attorney. Yes. Judge, there was no money recovered. Every officer that testified was asked whether any money was recovered and whether any money was inventoried. And to those questions, the officers had to say no. Yes. Then, during this fact finding, the defense attorney argued the judge, this officer said that he recovered the controlled substances, but he never recovered any money whatsoever. During the state's argument at the close of all the evidence, the state never even talked about the fact that there was no money recovered. Then, subsequently, the judge, the fact finder, found the defendant guilty and never commented at all regarding the issue that no money was recovered. In fact, the judge never said, well, I believe the officer, even though there wasn't any money recovered. Maybe it was dropped somewhere. I don't know. But in this case, we have an officer who said he never lost sight of the defendant. And he observed him exchange packets for U.S. currency. And at the same time, he testified that no money was recovered, no money was inventoried. So isn't there, indeed, a question of credibility in this particular case because you have transactions occurring but no money in the pocket? Yes, Your Honor. So there is a question of credibility raised to the fact finder regarding that inconsistency. But the question in this case and in the surveillance privilege cases is not whether or not the officer was credible, but it's the extent to which the fact finder is able to evaluate credibility. And in the Knight case, I think it's the Knight case, when the first district first enunciated that it would recognize this privilege, didn't it say that the rule is that there really should always be disclosure and that the exception is that there would be a case where there wouldn't be disclosure, especially when the witness upon whom the state is basing its case is really the be-all and the end-all of the prosecution? Yes, Your Honor. The Knight court specified that it should almost always be. There was the caveat of almost, and then the court proceeded to explain why. So this is the case that's in the almost? This case, in line with many subsequent cases that came after Knight, is the almost. This court's cases have pretty consistently since Knight, with the exception of perhaps Price, have continued to build upon the almost. So almost became bigger? Yes, Your Honor, it has. Was there any money in Reed? There was not. I think you're wrong about that one. I think there was about $21. Okay. It was a water pump, but there was money. The people stand corrected, Your Honor. However, in Reed, the cross-examination in Reed was part of why, in addition to finding that the defendant had to make his record for this court to be able to review, and then with this court presuming that the trial court's ruling had a sufficient factual and legal basis, the cross-examination was also very robust. And, in fact, the cross-examination accordingly, because it was, the trial court was able to evaluate the credibility of that one officer there. When you say it was robust, are you basically saying that since the officer said he was up two stories, that he was 20 feet away, that he was able to observe packets, and he was able to observe U.S. currency, and he was also able to hear that the location was basically disclosed? Is that part of what your argument is? Only part, Your Honor, because the cross-examination during it, they were able to elicit way more facts. I mean, the defense counsel was able to show the officer some exhibits of the vacant lot that he testified to. The exhibits, it was borne out that there was a tree in the field. The tree had bugs on it. However, the tree was in the middle of the field, which was nowhere near where the defendant was walking on Karloff, pacing up and down when his customers approached him. Furthermore, the cross-examination also illustrated that with all three customers, the defendant went into the lot, nowhere near the tree, walked to the north of the lot, and then a few feet off the sidewalk, that's where his stash was. He'd stoop down, get the item, and hand it to the customer. That happened three times. Wasn't he recovered with eight packets in his back pocket? Yes, Your Honor. So why is he stooping down again in any packets? Were any packets recovered from the lot? Not from the lot itself, but from the defendant later on at the station. Right, so the defendant has them on his person. So isn't that a question of credibility, too? Are they recovering where he goes to his stash? The officers did not. There's no testimony regarding whether or not they went back to that location. Afterward, they simply detained the defendant, searched him, brought him to the station. So the defendant's got multiple packets on his person, but for whatever reason he has to go back to under a rock? For the defendant, the officers testified that the defendant went into the field to conduct the transaction. Perhaps it was because he was pacing and felt that he was more exposed and that he somehow had cover, but these were questions, again, for the fact finder that enabled it to evaluate whether these officers were, in fact, telling the truth. I want to go back to the in Camry proceeding. Yes, Your Honor. We're at a lawsuit. We don't know what the basis for the court permitting the privilege to be exercised. We don't know if it was because this is a building where the owners have routinely helped the police. We don't know really what the reason is, and the rule, this Supreme Court rule, says that the proceedings shall be transcribed, sealed, and preserved for review. And in this case, there's absolutely no question that the party, the movement, the one that wanted to keep this location secret was the state. Now, why isn't it the state's burden, as the movement, to make certain that that transcript wasn't prepared? Because under Deleon and Coates, which explicate the rule Your Honor is discussing, it's about the appellant. No, it isn't. Both of those cases point out that it is the movement's burden. I don't agree with you that the cases turn on who was appealing. I believe those cases indicate that when there's a request for an in-camera hearing, that the initial burden rests with the movement who's seeking either disclosure or the non-disclosure or the production or the non-production of certain items. You don't believe that that's how those cases have been? You don't agree with that interpretation? Respectfully, Your Honor, the people rely upon the language and the decisions themselves, which does say appellant. In this case, the appellant would be the defendant. So it is the people's position. Respectfully, of course, Your Honor, that is in fact. Let's say it's not your burden. All right. The rule says that the proceedings shall be transcribed, a record prepared, those transcripts sealed for our preview. Did the court err? Did the court err when it conducted this in-camera hearing outside the presence of both the state and the defense by not ordering a transcript? No, Your Honor, the court did not err. The court was in complete compliance with the rule. The rule says shall. And the shall and the rule is in respect to the proceedings, which themselves are distinguishable from the inspection, which occurs in-camera. Therefore, it's only the proceedings pertaining to what was discussed in-camera, which are on record. Then why would it have to be sealed? I'm sorry, Your Honor? If the court didn't come out, the court, the rule says that it has to be sealed, right? Yes. Whether it's the in-camera proceeding, whatever the testimony is, it has to be sealed. So if the court didn't err in this case, whatever the judge said when they came out, why would that need to be sealed? There was nothing, nothing in there that would have to be sealed. So if your position is correct, that the rule is only saying, well, you have to put it on the record what the ruling is and the basis for it, you don't have to put anything else on, why would that ever have to be sealed? The potentially discoverable material that was at issue, in the cases that do make these distinctions, there was some material or other that itself was very sensitive. In Coates and in Deleon, it was documents from DCFS or, in past cases, sensitive police reports, which by statute were confidential. And so those documents themselves would have aided in this court's review. And in both of those cases, not only were the movements making the request, but those same movements were the appellants, because they were complaining about an error that had occurred, right? Correct. Go ahead. And in both of those cases, the appellants had failed to ask that those documents be sent. And so in essence, in so failing to do that, they deprived this court of an opportunity to review the claim of error, which they were asserted. All right. Now, forgetting the rules, forgetting the in-camera procedures, let's get down to the other part of the proceedings. Once the state asks for this privilege to be applied, then the defendants, in this case, and apparently it looks like it's happening all the time, defendants are filing motions in limine to get discovery they would normally get. And so the defense attorney said to the judge, well, I know you're not going to let us get into this, but the defendant argued and argues now that this was relevant information because you have one officer, the case hinges upon the officer. Now, with that being said, how did this court, what did the court do? What did the trial judge do or say that indicated in any way that he weighed the interest of the defendant against this other interest that we don't know what it was? We don't know if it was to protect a building owner who was robberied. We don't know what his reason was. But what did the court do here? How did the court ever weigh anything? Is there anything in the record that says he did that? Yes, Your Honor. The proceeding directly after the in-camera inspection, when the trial as a whole illustrates that the court did conduct the proper balancing analysis. What did he say? As soon as he came out and he said, I've just, you know, I conducted an in-camera hearing with Officer Bastille. I believe he gave a star number. That was the enforcement officer. The court said, based on my review of the arrest report and my conversations with him, I do find that the state has made a preliminary showing of disclosure of the surveillance location would harm the public interest and should remain privileged. The proceeding then continued, though. The trial court afforded counsel an opportunity to argue. Counsel essentially agreed that, yes, yes, Judge, I know that, you know, I can't get into the exact location, but, you know, typically case law permits me to cross as to distance, elevation, you know, things of that nature. How did the court then weigh? Yes, Your Honor. The court replied to counsel's argument by saying he would be able to cross as to the distance, whether any possible obstructions, any visual aids. But I'm not going to disclose, dash, dash, for me to disclose further, given the location and the fact that this is a vacant lot. I'm not going to disclose anything further than what you're entitled to on cross. That's my ruling. And so, Your Honor, as a whole, the trial court didn't come out and mechanistically announce that I will not balance. But it did, the flow of the proceeding itself illustrates that the trial court had just talked with the officer and understood what was going on. There was something sensitive about this lot, perhaps, in relation to the location that the officer had just described him. And so the trial court said, okay, here's what you're going to be able to do on your cross. This is what your defense is. I recognize your defense is important, and, you know, you can cross on what the cases permit. At the same time, there's something else going on here in respect to this lot, and the public interest is going to outweigh your ability to not know this one fact on cross. Did the court discuss the relevance of the cross examination for the defendant, or did the court in any way discuss? I mean, at that point, there hadn't really been any evidence presented. But putting aside all these other reasons that you have ably argued for why we should affirm, the cases also say that where the credibility of the officer is the key to the case, then disclosure should occur. What is your comment to that? I direct this court, again, to that almost. And it's not that slender a read to put the argument on, For instance, case after case after night, Quinn, Britton, Reed itself, they all countenance the fact that when the officer is able, when the defendant is able to pinpoint roughly where the officer is in his ability to see and evaluate what he's testifying to occur, that it's sufficient cross examination. There's one fact in the cross examination which essentially hasn't been revealed. But in Reed, wasn't there money recovered? Even though there was money recovered in Reed and there wasn't here, Reed emphasized heavily how essentially powerful the cross examination is. And in Reed, the cross examination, Reed, Your Honors, is a weaker case than the one we have here. Because in Reed, there was only one officer who testified. Here, however, there was money recovered, though. There was money recovered. You know, in the first case, when this was recognized as a privilege in Illinois, People versus process. Did you know, in Chris, that in that case, there were not only one officer, but there were two officers actually observing? Yes, Your Honor. And did you also know that in that case, that the officers stopped the first two individuals that had made transactions with the defendant who was on trial and that in that case, they actually stopped the individuals, recovered controlled substances, and those were part of the case in chief in that particular instance? Yes. We had more than just one officer watching, didn't we? In this case? No. In the first case where the court, an appellate court, the Fourth District, recognized sort of after the fact that there was this privilege and, therefore, in that case, they concluded that the disclosure, the nondisclosure was appropriately exercised. Yes. In such a case, again, that occurred at a suppression hearing, but were such a case to occur at trial where you have another officer, essentially two people watching, and they can both corroborate not only the fact that they recovered the same person eventually but they, in fact, saw the same person doing whatever he was doing that was illegal. Isn't your burden higher? The burden would remain the same because it would still, the ultimate question would be was the fact finder able, in light of what those two people were cross-examined about, would the fact finder be able to evaluate whether those witnesses were, in fact, credible? Don't the cases clearly distinguish between the privilege that's used at a preliminary hearing or, say, a motion to suppress and when the defendant is actually on trial? Yes. And isn't the burden of the state, the movement, heightened in this case because this was at trial? It had nothing to do with a preliminary hearing or anything involving a motion to suppress. The Knight case explicitly says it distinguished, Chris, and it said that occurred at a suppression hearing. This is trial. At suppression hearings, it's a bit more lax. However, at trials, it's not. The rights are confront and cross-examine is rather robust. But cases after Knight that have repeatedly distinguished it, Reid, Britton, Quinn, Bell, all from this court, ask, okay, so the cross-examination was restricted in this one layer, it was this fact, but in light of what the cross-examination said, did it permit the fact finder to judge whether or not the testimony was credible? And so even though there's a more robust right to confrontation, of course, at trial under the Sixth Amendment, that right isn't eliminated in this court's post-Knight cognizance of what a cross-examination should look like. The defense counsel is still able to ably cross-examine a witness without defense counsel being able to elicit this one fact. And when defense counsel is able to do so, the trial court or jury, perhaps, could then listen to that testimony and say, I've heard enough, where I'm able to judge whether that was true or false. That wasn't the case in Knight. Anything you want to add? Yes, Your Honor, if I may. Defense counsel suggested in their argument in their brief that this court should reject the privilege as a matter of law. The people wish to point out that the privilege of the court should not do that. The privilege itself is very limited. Well, it doesn't seem to be these days. It appears to me that what is occurring in the trial courts is there's this automatic presumption that if there's an officer, a surveillance officer, observing transactions from a location some distance from the actual transactions, that routinely the courts are, everyone's assuming that the privilege is exercised and the defendants are filing motions in limine for disclosure. So that indicates to me that this is no longer some kind of an exception, but now the rule is that any time an officer is observed in a location that they don't want to disclose, everybody just assumes it's not going to be disclosed, and then the defendant has to file a motion to get the location. Your Honor's concern applies, addresses the case-by-case nature of why the privilege is limited. And while this court has in fact found that in many cases, which are factually analogous, that continue to come forth from this court, the privilege should have applied in cases like that. Presumably there are cases in which it should not apply, such as night or price, which do occur as well in the trial courts. But, Your Honor, that's concerning application in a given case. The privilege is further limited, though, because once it does apply, its application is limited because it only forbids one question from coming out on cross-examination. We're going to consider this case as to these facts when we make the decision today. Yes, Your Honor. We are. We're going to consider whether this is a case where the credibility of the officer was actually the key to the whole case. Yes. And when Your Honors do so, the people urge you to keep in mind that this court's decisions published, both written and read, illustrate the validity of the privilege. Justice House was the author. I was concurring, and then I think Justice Epstein wrote a special concurrence. Yes, Your Honor. Suggesting the idea that, like the New Jersey courts, where these in-camera hearings are routinely transcribed, the appellate court can then have access to review why the court did what it did in the first instance. Yes, Your Honor. Both written and read were featured at the same park. Written occurred on October 15, 2009. Read occurred on September 6, 2010. Both of them were in Douglas Park on Roosevelt and Whipple. They both featured narcotic sales in the exact same park in less than a year. And so it seems as though the published decisions of this court recognize that law enforcement do need the privileges helpful. They were able to continue to address a pervasive problem in the same place because someone or some people continued to risk their lives by offering their property so that law enforcement can combat that problem. All right. Anything further, Mr. Flores? No further. Nothing further from the people. For those reasons and the ones stated in our brief, we ask that this court affirm the defendant's conviction. Mr. Flores, that would be the most questions you will ever get. So for your first one, you hit a big one. Thank you, Your Honor. Appreciate it. Stein. Just a few brief points in rebuttal, Your Honors. Even if the State's interpretation of 415F is correct, that doesn't affect the ultimate outcome here. Because Knight indicates that there is a presumption in favor of disclosure even when the State has very compelling reasons. And as was noted, the court here did not weigh the defendant's need for cross-examination. The State argued that the cross-examination here was robust and therefore there was no prejudice. And Knight has rejected that argument, noting that no matter how robust the cross-examination, there's no real way for counsel to impeach the officer's testimony without disclosure. And this offends a defendant's right to confrontation. I have no further argument unless the Court has any further questions. We thank you, Ms. Stein. And, Mr. Flores, the arguments were very well executed. The briefs were well done. And we thank you for your time today. We're going to take the matter under advisement. The Court will stand in a brief recess.